UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PAULO CEZAR F. FEITOZA,

    *Plaintiff*,

    v.

KRISTI NOEM, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; JOSEPH B. EDLOW, *in his official capacity as Director of the United States Citizenship and Immigration Services*; CONNIE NOLAN, in his official capacity as Associate Director, Service Center Operations Directorate,

    *Defendants*.

Civ. No.: 4:26-cv-40011-MRG

**MEMORANDUM AND ORDER GRANTING IN PART PLAINTIFF'S *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER [ECF No. 9]**

**GUZMAN, J.**

    Before the Court is Plaintiff Paulo Cezar F. Feitoza's Emergency *Ex Parte* Motion for a Temporary Restraining Order, [ECF No. 9],[1] that he filed on January 23, 2026. For the reasons stated below, shortly following a hearing on January 29, 2026, the Court **GRANTED IN PART** Plaintiff's Emergency *Ex Parte* Motion for a Temporary Restraining Order and issued narrow relief to ensure no irreparable harm occurred as the underlying facts develop. [ECF Nos. 14, 15]. This memorandum explains the Court's reasoning.

---

[1] Plaintiff filed two motions for a temporary restraining order. [ECF Nos. 4, 9]. They appear to be substantively identical. The Court treats [ECF No. 9] as operative. At times, the Court may cite exhibits to [ECF No. 4].

1

I.      **BACKGROUND**

Paulo Cezar F. Feitoza ("Plaintiff"), a noncitizen[2] who overstayed his visa, applied for an I-485 adjustment of status with United States Citizenship and Immigration Services ("USCIS") after marrying a United States citizen. [ECF No. 1, ("Compl.") ¶¶ 24–27]. Thereafter, USCIS scheduled a mandatory, in-person interview—colloquially referred to as a "green card" interview[3]—with Plaintiff for January 29, 2026. [Id. at ¶ 1]. Afraid that U.S. Immigration and Customs Enforcement ("ICE") would unlawfully arrest him upon appearing for his interview, Plaintiff filed a lawsuit against Kristi Noem (Secretary of the U.S. Department of Homeland Security), Joseph B. Edlow (Director of USCIS), and Connie Nolan (Associate Director of USCIS Service Center Operations Directorate) in their official capacities (together, "Defendants") seeking, among other relief, an order enjoining his arrest at the scheduled interview. [See generally id.] After filing his lawsuit on January 21, 2026, Plaintiff filed an Emergency *Ex Parte* Motion for a Temporary Restraining Order [ECF No. 9, ("TRO Motion")] on January 23, 2026.

In addition to a Fifth Amendment right to due process claim, Plaintiff's Complaint contains claims for declaratory and injunctive relief seeking review of agency action under the Administrative Procedure Act ("APA") 5 U.S.C. §§ 551–559. [See generally Compl.]

The allegations in the Complaint center around Plaintiff's fear that he will be arrested upon showing up for his adjustment-of-status interview consistent with Defendants' recently "adopted practice of arresting I-485 applicants during their green card interviews." [Id. ¶¶ 30–31]. Defendants' alleged practice, Plaintiff claims, amounts to an "enforcement trap" that runs afoul of

---

[2] Consistent with recent U.S. Supreme Court practice, the Court uses "noncitizen" in lieu of the statutory term "alien." See, e.g., Patel v. Garland, 596 U.S. 328 (2022) (Barrett, J.); United States v. Palomar-Santiago, 593 U.S. 321 (2021) (Sotomayor, J.); Barton v. Barr, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J.) (citing 8 U.S.C. § 1101(a)(3)) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'").

[3] The Court refers to the interview as an "adjustment-of-status interview."

the Immigration and Nationality Act ("INA") and, therefore, must be set aside under the APA. [Id. ¶¶ 62–78, 110]. Plaintiff filed the TRO Motion on January 23, 2026, seeking an order "restraining Defendants, their agents, officers, employees, and all persons acting in concert with them from arresting, detaining, or removing Plaintiff in connection with [his] USCIS adjustment of status interview scheduled for January 29, 2026 . . . ." [TRO Motion at 1–2]. The Court granted the TRO Motion in part on January 29, 2026. [ECF Nos. 14, 15].

Plaintiff attempted to effectuate service of his Complaint and notify Defendants of his TRO Motion. There's no indication that his attempts were successful. His attempts to provide Defendants with notice of his TRO Motion—including by using a U.S. Department of Justice ("DOJ") CM/ECF email address that the DOJ allegedly uses to monitor filings in federal court cases—are detailed in Plaintiff's Certification of Attempt to Provide Notice Pursuant to Federal Rules of Civil Procedures 65(a)-(b). [ECF No. 9-2]. The Court held an *ex parte* hearing on January 29, 2026, at 8:00 AM ET.[4]

## II. JURISDICTION AND RIPENESS

The Court begins with standing. At the TRO stage, "the plaintiff must make a 'clear showing' that [he] is 'likely' to establish each element of standing." Murthy v. Missouri, 603 U.S. 43, 58 (2024) (quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 22 (2008)); Orkin v. Albert, 557 F. Supp. 3d 252, 256 (D. Mass. 2021) (citation omitted) (the TRO and preliminary injunction standards are the same). Plaintiff makes the requisite showing here.

### A. Standing

Plaintiff's request for relief falls within a federal court's limited jurisdiction over "Cases" and "Controversies." U.S. CONST. art. III, § 2. Article III standing requires a plaintiff to

---

[4] The transcript is on record with the Court.

demonstrate a "personal stake" in the litigation, or in Justice Scalia's words, to answer the question: "What's it to you?" TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (quoting Antonin Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 SUFFOLK U. L. REV. 881, 882 (1983)); Raines v. Byrd, 521 U.S. 811, 819 (1997).

To demonstrate a "personal stake," a plaintiff must show "(1) that she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." Thole v. U.S. Bank N.A, 590 U.S. 538, 540 (2020) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)). "The imminence requirement is met 'if the threatened injury is certainly impending or there is a substantial risk that the harm will occur.'" Massachusetts v. United States Dep't of Health & Hum. Servs., 923 F.3d 209, 222 (1st Cir. 2019) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

Here, Plaintiff alleges a credible threat of arrest, which constitutes an injury in fact. The Supreme Court has explained that "a plaintiff should not have to 'expose himself to actual arrest'" to challenge allegedly unlawful government action. See Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Steffel v. Thompson, 415 U.S. 452, 459 (1974)); see also Driehaus, 573 U.S. at 159. This principle is well established in pre-enforcement review jurisprudence.

Plaintiff's fear of arrest is neither "imaginary [n]or wholly speculative." Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 302 (1979) (citing Steffel, 415 U.S. at 459). It is supported by multiple sources, including recent arrests of similarly situated I-485 applicants.[5] Plaintiff cites recent reporting from reputable news organizations of arrests that occurred at

---

[5] The Court notes that evidentiary standards are relaxed at the TRO stage and it may rely on otherwise inadmissible evidence to assess the appropriateness of granting emergency relief. See Nantucket Wine & Food Festival, LLC v. Gordon Companies, Inc., 759 F. Supp. 3d 259, 276 (D. Mass. 2024) (citing Asseo v. Pan Am. Grain Co., 805 F.2d 23, 25–26 (1st Cir. 1986)).

4

adjustment-of-status interviews elsewhere. [Compl. ¶¶ 52–56]. He also includes an affidavit from an experienced immigration law practitioner attesting to the "immediate, serious, and credible" risk of Plaintiff's arrest "based on [his] experience and recent events." [ECF No. 4-2 ¶ 6]. Additionally, at the January 29, 2026 *ex parte* hearing on the TRO Motion, Plaintiff's counsel represented that arrests at adjustment-of-status interviews have allegedly occurred across the nation, including in California, Ohio, and New York. [ECF No. 14].

Finally, the Court notes that in a similar APA challenge, Defendants declined to disavow the possibility of the allegedly unlawful arrest that Plaintiff seeks to prevent here. Caike Barbosa Leite Silva v. Kristi Noem et al., No. 2:25-CV-11867, 2025 WL 3764074, at *2 (C.D. Cal. Dec. 18, 2025) (Defendants conceded "that despite being non-removable, Plaintiff could nevertheless be arrested . . . at his adjustment of status interview."). Taken together, this evidence satisfies the imminence requirement.

Plaintiff also satisfies causation and redressability. A favorable judicial decision would enjoin Defendants from carrying out the threatened arrest. See Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (discussing causation and redressability). Accordingly, Plaintiff has cleared the Article III standing hurdle.

### B. Plaintiff's APA Claim is Ripe for Review

"Under the APA, a party must obtain a 'final agency decision' prior to seeking judicial review of an agency action." Commonwealth of Puerto Rico v. United States, 490 F.3d 50, 69 (1st Cir. 2007) (quoting 5 U.S.C. § 704). Two conditions must be met for an agency action to be final. "First, the action must mark the 'consummation' of the agency's decisionmaking process." Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (quoting Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)). "Second, the action must be one by which 'rights or

5

obligations have been determined,' or from which 'legal consequences will flow.'" Id. at 178 (quoting Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatl., 400 U.S. 62, 71, (1970)).

Plaintiff has alleged that "Defendants [have engaged in a] practice of arresting individuals at USCIS interviews who are attending mandatory interviews for adjustment of status based on marriage to U.S. citizens," and that this practice "constitutes final agency action." [Compl. ¶ 64]. This is a reviewable agency action under the APA because Plaintiff has made a showing that the "consummation" and "legal consequences" prongs are satisfied.

Plaintiff does not allege a one-off arrest carried out by a rogue ICE agent in defiance of agency policy. Rather, Plaintiff alleges a non-isolated practice—spanning multiple states[6]—of arresting I-485 applicants that ICE has declined to disclaim or separate itself from. [Compl. ¶¶ 52–56, 59.] Additionally, according to the Complaint, when asked about arresting I-485 applicants at USCIS offices reporting for adjustment-of-status interviews, "an ICE spokesperson" said, in part: "Individuals unlawfully present in the United States, including those out of status at federal sites such as USCIS offices, may face arrest, detention, and removal in accordance with U.S. immigration law." [Id. ¶ 59]. As presented in the Complaint, this response from ICE may be construed as amounting to a ratification of the allegedly unlawful arrests. See Washington v. U.S. Dep't of Homeland Sec., 614 F. Supp. 3d 863, 873 (W.D. Wash. 2020) ("because [DHS] has done nothing to disassociate itself from its agents' ['courthouse arrests'], it must be viewed as at least ratifying the 'courthouse arrests' at issue and the furtive manner in which they have been performed"); see also Carla Maria Vargas Lisboa v. Kristi Noem., No. 5:26-cv-00208-SSS-DTB, ECF No. 11 at 5 (C.D. Cal. Jan. 19, 2026) (citing id.) (concluding that the response from the ICE

---

[6] The multiple states allegation was made at the January 29, 2026 TRO hearing.

spokesperson cited above "is further evidence that the agency has done nothing to dissociate itself from its agents' behavior and has instead ratified such arrests at USCIS offices").

At this preliminary stage, the fact that the alleged practice has not been reduced to writing does not alter the Court's "final agency action" conclusion. See, e.g., R.I.L.-R v. Johnson, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (citing Venetian Casino Resort LLC v. EEOC, 530 F.3d 925, 929 (D.C. Cir. 2008)) ("Agency action . . . need not be in writing to be final and judicially reviewable."); Venetian Casino Resort LLC, 530 F.3d at 929 (concluding that "the record" as a whole "leaves no doubt" that a policy exists, even though "the details . . . are still unclear"). In another session of this Court, Judge Young observed that "a contrary rule 'would allow an agency to shield its decisions from judicial review simply by refusing to put those decisions in writing.'" Am. Ass'n of Univ. Professors v. Rubio, 780 F. Supp. 3d 350, 385 (D. Mass. 2025) (quoting Aracely, R. v. Nielsen, 319 F. Supp. 3d 110, 139 (D.D.C. 2018)); see also Wagafe v. Trump, No. C17-0094- RAJ, 2017 WL 2671254, at *1, *10 (W.D. Wash. June 21, 2017) (denying a motion to dismiss an APA challenge to "an allegedly secret and unlawful government program").

Plaintiff also makes a sufficient showing that the legal consequences prong is satisfied. Defendants' challenged arrest-at-interview practice is one by which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" Bennett, 520 U.S. at 177–78 (quoting Port of Bos., 400 U.S. at 71). See, e.g., Ramirez v. U.S. Immigr. & Customs Enf't, 310 F. Supp. 3d 7, 23 (D.D.C. 2018) (finding that an "agency's placement decisions had immediate and significant legal consequences for Plaintiffs, who must bear detention in more restrictive settings than Defendants might otherwise deem appropriate based on the [immigration statutes]"); Nava v. Dep't of Homeland Sec., 435 F. Supp. 3d 880, 903 (N.D. Ill. 2020) ("legal consequences" flow from ICE's decisions to make an arrest).

Accordingly, the Court joins two other federal courts in concluding that, at the TRO stage, the alleged arrest-at-interview practice is reviewable under the APA. See Carla Maria Vargas Lisboa v. Kristi Noem., No. 5:26-cv-00208-SSS-DTB, ECF No. 11 at 3–6 (C.D. Cal. Jan. 19, 2026) (citing id.); Caike Barbosa Leite Silva, 2025 WL 3764074, at *2.

### III.  LEGAL STANDARD

"A temporary restraining order 'is a provisional remedy imposed to maintain the status quo until a full review of the facts and legal arguments is available.'" Ginzburg v. Martínez-Dávila, 368 F. Supp. 3d 343, 347 (D.P.R. 2019) (quoting Pro-Choice Network v. Schenck, 67 F.3d 377, 388–89 (2d Cir. 1995)). To justify an *ex parte* temporary restraining order ("TRO"), a plaintiff must provide:

> (A) specific facts in an affidavit or a verified complaint [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1)(a)–(b). Plaintiff has met both requirements. [See ECF No. 4-1 at 3–4 (Certification of Notice); ECF No. 9-1 (detailing allegedly immediate and irreparable harm throughout)]. From there, to prevail on a TRO, a plaintiff must satisfy the familiar preliminary injunction factors. Orkin, 557 F. Supp. 3d at 256 (quoting Bourgoin v. Sebelius, 928 F. Supp. 2d 258, 267 (D. Me. 2013)) ("The standard for issuing a TRO is 'the same as for a preliminary injunction.'"). A plaintiff must show "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020) (quoting Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)).

The critical consideration is Plaintiff's likelihood of success on the merits. Corp. Techs., Inc. v. Harnett, 731 F.3d 6, 9–10 (1st Cir. 2013) (explaining that likelihood of success is the "main bearing wall" of the preliminary injunction framework) (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996)).

IV.  **DISCUSSION**

  A. **Likelihood of Success on the Merits**

Plaintiff alleges that "Defendants' practice of arresting individuals at USCIS interviews who are attending mandatory interviews for adjustment of status based on marriage to U.S. citizens" is contrary to the INA, and, in turn, must be set aside under the APA. [Compl. ¶¶ 64, 71]. At this early stage, Plaintiff has shown a substantial likelihood of success on the merits of this claim.

Under the INA, 8 U.S.C. § 1255, Congress "provides pathways to legal residency" for certain noncitizens. You, Xiu Qing v. Nielsen, 321 F. Supp. 3d 451, 464 (S.D.N.Y. 2018). "These pathways permit [noncitizens] not lawfully in the United States to 'adjust' their status to legal permanent resident if they meet certain requirements." Id. (citing 8 U.S.C. § 1255(a)).[7]

Statutory purpose is instructive here. "The INA's adjustment of status scheme is perhaps one of the statute's strongest articulations of Congress's considered public policy in favor of family unity and association." Nielsen, 321 F. Supp. 3d at 465. "The terms and provisions of 8 U.S.C. § 1255(a)," the First Circuit has directed, "must be understood in the larger context of the statutory scheme." Succar v. Ashcroft, 394 F.3d 8, 26 (1st Cir. 2005). "The immigration laws about adjustment of status are not a haphazard compilation of provisions; they are a calibrated set of

---

[7] Noncitizens convicted of certain crimes, for example, are ineligible to apply for adjustment of status. 8 U.S.C. § 1182(a)(2). Noncitizens who work without authorization or who are in unlawful immigration status (e.g., overstayed a visa) are likewise ineligible unless they are immediate relatives (e.g., spouses) of U.S. citizens. 8 U.S.C. §§ 1255(c), (k).

9

rules that govern an area of national importance." Id. One such area of national importance is the preservation of family. Id. at 21–22 ("in enacting section 1255(a) . . . Congress expressed an intent that eligible [noncitizens] be able to adjust status without having to leave the United States, to relieve the burden on the United States citizen with whom the [noncitizens] had the requisite family or other relationship"). "That was one of the primary purposes of the legislation." Id. at 22.

Here, arresting Plaintiff, who meets the statutory eligibility criteria,[8] upon showing up for his mandatory adjustment-of-status interview would create an absurd and manifestly unjust result that is at odds with the statute. Neang Chea Taing v. Napolitano, 567 F.3d 19, 31 (1st Cir. 2009) (quoting Lockhart v. Napolitano, 561 F.3d 611, 620 (6th Cir. 2009)) ("'[w]e must assume that when drafting the INA, Congress did not intend an absurd or manifestly unjust result'"). Indeed, this alleged arrest-at-interview enforcement tactic "evokes a Kafka-esque approach to the rounding up and deportation of [noncitizens] chilling in its imperviousness to principles of due process." Chacon-Corral v. Weber, 259 F. Supp. 2d 1151, 1164 (D. Colo. 2003).

Accordingly, at the TRO stage, the Court concludes that using INA's adjustment-of-status procedure as a vehicle to lure applicants to federal facilities to conduct "gotcha" law enforcement is not in accordance with the law. Other courts have reached the same conclusion. See, e.g., Nielsen, 321 F. Supp. 3d at 466, 468 ("[b]y inviting Petitioner to interview for his green card and arresting him at his interview appointment, Respondents deployed § 1255 to effectuate the opposite of its intended outcome"); Franco v. Meyer, No. 1:25-CV-01620, 2025 WL 3280782, at *2 (E.D. Cal. Nov. 25, 2025) ("arresting [plaintiff] at his adjustment of status interview violates

---

[8] Plaintiff—by virtue of his "bona fide marriage with a United States citizen, Mrs. Pinky Grace Feitoza"— is eligible to apply for adjustment of status. [Compl. ¶¶ 24–28]."[Plaintiff] is . . . the exact type of applicant that Congress intended to benefit when it adopted and, over many years, repeatedly amended, the complicated statutory scheme governing the adjustment of status process." Nielsen, 321 F. Supp. 3d at 464. Congress's eligibility criteria may not be overridden or ignored. See, e.g., Succar v. Ashcroft, 394 F.3d 8, 24 (1st Cir. 2005) ("Congress has spoken clearly on the issue of eligibility for adjustment of status and has reserved for itself the determination of whether a non-citizen should be able to apply for this relief.").

the INA"); Caike Barbosa Leite Silva, 2025 WL 3764074, at *2 ("arresting or detaining [Plaintiff] under 8 U.S.C. § 1226(a) at his I-485 adjustment of status interview would be contrary to INA"); Carla Maria Vargas Lisboa v. Kristi Noem., No. 5:26-cv-00208-SSS-DTB, ECF No. 11 at 10 (C.D. Cal. Jan. 19, 2026) (finding APA violation at TRO stage and "reject[ing] arrest and detention practices predicated on manipulating the laws that Congress has passed").

Because the challenged arrest-at-interview practice would not be in accordance with INA, Plaintiff has shown a likelihood of success on the merits of his APA claim.[9] Dep't of Com. v. New York, 588 U.S. 752, 754 (2019) (quoting 5 U. S. C. § 706(2)(A)) ("[t]he APA instructs reviewing courts to set aside agency action that is . . . 'not in accordance with law'").

### B. Irreparable Harm

The likelihood of irreparable harm factor favors Plaintiff. Putting aside any potential irreparable harm related to family separation and the derailment of a pending I-485 application, Plaintiff's potential arrest alone constitutes irreparable harm. As outlined above, supra Section II.A, the threat of arrest is well supported and imminent. See Ercelik v. Hyde, No. 1:25-CV-11007, 2025 WL 1361543, at *14 (D. Mass. May 8, 2025) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)) (recognizing that the fear of being subject to unlawful arrest may constitute irreparable harm); Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004) (the right to be "free from physical detention by one's own government" is among "the most elemental of liberty interests"); Ferrara v. United States, 370 F. Supp. 2d 351, 360 (D. Mass. 2005) (citing Short v. United States, 344 F.2d 549 (D.C. Cir. 1965) (Bazelon, C.J. dissenting))) ("Obviously, the loss of liberty is

---

[9] Because Plaintiff has shown a likelihood of success on his APA claims, the Court declines to address Plaintiff's remaining claims. In a case where multiple claims are asserted, temporary injunctive relief may be warranted when substantial likelihood of success on the merits is shown on just one claim. See Worthley v. Sch. Comm. of Gloucester, 652 F. Supp. 3d 204, 215 (D. Mass. 2023) (citing Schiavo ex rel. Schindler v. Schiavo, 357 F. Supp. 2d 1378, 1384 (M.D. Fla.), aff'd, 403 F.3d 1223 (11th Cir. 2005) ("To obtain temporary injunctive relief, they must show a substantial likelihood of success on at least one claim.").

11

a . . . severe form of irreparable injury."). Accordingly, the Court finds that Plaintiff has shown a likelihood of imminent and irreparable harm.

### C. Balance of Equities and Public Interest

The balance of equities and the public interest factors also favor Plaintiff. "These factors merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). "[N]either equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022). While the Court recognizes and appreciates Defendants' strong interest in enforcing federal immigration laws, "the Government has 'no public interest in perpetuating unlawful agency action.'" U.H.A., K.A. v. Bondi, No. 26-417, 2026 WL 222226, at *9 (D. Minn. Jan. 28, 2026) (quoting Missouri v. Trump, 128 F.4th 979, 997 (8th Cir. 2025) (granting TRO to enjoin continued operation of certain DHS enforcement actions that violate the INA). Because Plaintiff has demonstrated a substantial likelihood of success that the challenged arrest-at-interview practice violates the INA and APA, the balance of equities and public interest both tip in his favor.

### V. CONCLUSION

For the foregoing reasons, the Court has **GRANTED IN PART** Plaintiffs' TRO Motion. [See ECF Nos. 14, 15].

**SO ORDERED.**

Dated: January 30, 2026

                                          /s/ Margaret R. Guzman
                                          Margaret R. Guzman
                                          United States District Judge